UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW LETHBRIDGE and
JENNIFER LETHBRIDGE as Co-Personal
Representatives of the Estate of Isaac Lethbridge
and as Next Friend of Emma Lethbridge,

      Plaintiffs,

v.                                           CASE NO. 06-14335
                                              HON. LAWRENCE P. ZATKOFF

LULA BELLE STEWART CETNER
KARL TROY, GRACIE ROBINSON,
EDNA WALKER, JANET BURCH and
CHARLISE ROGERS, jointly and severally,

      Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 17, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motion to Dismiss and for Summary Judgment. *See* Dkt. #40. Defendants Lula Belle Stewart Center, Karl Troy, Gracie Robinson, Edna Walker and Janet Burch filed the current motion on May 15, 2007, and Plaintiffs responded on July 6, 2007.[1] Defendants have since replied and both parties have filed papers in support of their positions. The Court finds that the facts and legal arguments are adequately presented in the parties'

---

[1] Defendant Rogers is no longer a party to these proceedings as the Court remanded all claims against her in an order dated October 20, 2006. *See* Dkt. #14. Defendant Burch was dismissed by a stipulation of the parties.

papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. for the reasons set forth below, Defendants' Motion to Dismiss and for Summary Judgment is GRANTED in part and DENIED in part.

## II. BACKGROUND

This case is brought pursuant to 42 U.S.C. § 1983 on behalf of two minor children who were abused while in the custody of a foster mother, which abuse resulted in the death of one of the children. Plaintiffs are the children's biological parents. Defendant Lula Belle Stewart Center (Lula Belle) is a non-profit child placing agency, licensed by the State of Michigan, that locates certified foster homes for children in need of foster care. Defendant Lula Belle receives the majority of its funds from the state and is subject to extensive regulation. Defendants Troy and Robinson are former employees of Lula Belle. Defendant Walker is a former director of Lula Belle.

The facts as set forth below are drawn from Plaintiffs' complaint and construed in the light most favorable to Plaintiffs. Sometime prior to June 2006, the Washtenaw County Juvenile Court removed the minor children involved in this case from Plaintiffs' care due to abuse and neglect, and assumed custody over them as temporary court wards. The court placed the children in the care of the Michigan Department of Human Services (DHS) in order to care for the children during the period of court custody. In turn, DHS placed the children in the custody of Defendant Lula Belle pursuant to a contract so that Defendant Lula Belle could locate a suitable foster home for the children. Based on this contract, Defendant Lula Belle assumed an obligation to ensure the children's health and safety. The contract obligated Defendant Lula Belle to hire individuals who met Michigan's requirements for child placement workers, to train its employees, and to place the children in foster homes that it certified as meeting state standards.

2

In June 2006, Defendant Lula Belle placed the children with Defendant Rogers for foster care. Although Rogers was a licensed foster care giver, she had been suspected of abusing or neglecting foster children on prior occasions. While the children were in Rogers' care, Defendants Troy and Robinson monitored the children and supervised their overall care according to Michigan's regulations and Defendant Lula Belle's contract with DHS. Defendant Walker directed and controlled the overall foster care program at Defendant Lula Belle, including the actions of Defendants Troy and Robinson. During this time, Defendants Troy and Robinson became aware of signs that the children had been abused or neglected, yet they failed to report the abuse or otherwise take action. In particular, on August 4, 2006, Defendants Troy and Robinson became aware of multiple and extensive injuries to the children indicative of abuse. Again, neither of them acted.

On August 16, 2006, the male child was beaten to death in Rogers' home. An autopsy revealed burns to his chest and abdomen, multiple bruises, evidence of blunt force to his abdomen and head, a broken clavicle, and a brain hemorrhage. Also, the female child had been sexually assaulted while in Rogers' custody and contracted Hepatitis B. Following these tragic events, Plaintiffs filed the present action on behalf of the children alleging a violation of their constitutional rights under the Fourteenth Amendment. Defendants now move to dismiss and for summary judgment.

### III. ANALYSIS

Defendants have presented several arguments in support of their motion. Defendants move to dismiss Plaintiffs' complaint based on Fed. R. Civ. P. 12(b)(6), and argue that Plaintiffs have failed to state a claim because (1) Defendant Lula Belle was not a state actor for purposes of liability under 1983; (2) Defendant Lula Belle did not have a policy, practice, or custom that would render it liable under 1983 based on its employees' conduct; (3) the facts as pled do not show that

3

Defendants were deliberately indifferent to the children's safety; (4) the facts as pled do not support a claim against Defendant Walker based on supervisory liability; and (5) the Michigan statutes relied on in the complaint do not create a property interest protected by procedural due process. Defendants aslo move for summary judgment based on Fed. R. Civ. P. 56(c), and argue that there is no genuine issue of fact that they are entitled to absolute immunity from suit. For convenience, the Court will address each claim separately.

Before addressing the merits of the claims, however, the Court finds it is necessary to express its dissatisfaction with the punctuality of Plaintiffs' counsel thus far. Plaintiffs' counsel has repeatedly missed deadlines and failed to appear at a scheduling conference in this matter, requiring the Court to issue several orders to show cause and wasting the Court's valuable time. Further, not only did Plaintiffs' counsel file his response to the present motion late, he felt it was necessary to include hundreds of pages of exhibits that were virtually all irrelevant to the issues raised in Defendants' motion. This type of behavior is unacceptable and will not be tolerated. Thus, the Court reserves the right to sanction counsel and warns that any future non-compliance with the Court's orders or rules, regardless of how minor, will result in the dismissal of this action.

## A. Defendants' Arguments to Dismiss

### 1. Legal Standard

A motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of Plaintiffs' claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in Plaintiffs' favor. *Jackson v. Richards Med. Co.*, 961 F.2d 575, 577-78 (6th Cir. 1992). The Court may properly grant a motion to dismiss for failure to state a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### 2. State Action

Plaintiffs' claim is based on 42 U.S.C. § 1983, which provides:

> Every person who, under color of statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

42 U.S.C. § 1983. In order to state a claim under § 1983, a plaintiff "must allege that he was deprived of a right secured by the Federal Constitution or laws of the United States by a person acting under color of state law." *Wolotsky v. Huhn*, 960 F.2d 1131, 1135 (6th Cir. 1992). A claim against a private party can only be maintained where that party's actions "are fairly attributable to the [state]." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982). Defendants argue that Plaintiffs' constitutional claim should be dismissed because they have failed to allege the presence of state action. Specifically, Defendants contend Defendant Lula Belle is a private corporation engaged in private activity and that there is no basis for characterizing its actions as those of the state. The Court is not persuaded.

The Sixth Circuit has recognized three tests for determining whether the challenged conduct may be fairly attributable to the state in order to hold Defendants liable under § 1983. First, the public function test "requires that the private entity exercise powers which are traditionally exclusively reserved to the state ..." *Wolotsky*, 960 F.2d at 1335. Second, the state compulsion test "requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Id.* Third, under the symbiotic relationship or nexus test, "the action of a private party constitutes state action

when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Id.* Plaintiffs need only satisfy one of these tests in order to state a claim under § 1983.

Plaintiffs have not alleged the presence of any coercion or significant encouragement on the part of the state; nor have Plaintiffs alleged that monitoring foster care has been traditionally exclusively reserved to the state. Nevertheless, the Court finds that Plaintiffs' complaint alleges sufficient facts to show a sufficiently close nexus between the state and Defendants' alleged constitutional violations so that the alleged violations may be fairly attributed to the state.

The Fourteenth Amendment's Due Process Clause imposes an affirmative obligation on states to ensure that minor children who become wards of the state by virtue of state action are not treated with deliberate indifference as to their health and safety. *Lintz v. Skipski,* 25 F.3d 304, 305 (6th Cir. 1994); *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 476 (6th Cir. 1990). *See also Frazier v. Bailey*, 957 F.2d 920 (1st Cir. 1992); *Perez v. Sugarman*, 499 F.2d 761 (2d Cir. 1974). This is to be distinguished from providing hands on, day-to-day care, which is not the state's obligation. *See Leshko v. Service*, 423 F.3d 337, 342 (3d Cir. 2005); *Milburn v. Dep't of Social Services*, 871 F.2d 474, 479 (4th Cir. 1989).

In this case, the state of Michigan assumed an affirmative duty to ensure the children's safety when it exercised its sovereign power to remove the children from their parents' home. The children were removed from Plaintiffs' home by order of the Washtenaw County Juvenile Court and placed in the custody of DHS. Pursuant its contract with DHS, Defendant Lula Belle placed the children in a foster home and also assumed the responsibility of monitoring the children while in the foster home, creating a placement plan for the children, and reporting on the children's status to DHS. Thus, based on Plaintiffs' allegations, in fulfilling its affirmative obligation, DHS enlisted the

service of Defendant Lula Belle and the two entities worked together to ensure that the children received proper care.

Furthermore, Defendant Lula Belle is subject to significant regulation and receives the majority of its funds from the state. Michigan's regulations require agencies such as Defendant Lula Belle to closely monitor the well-being of children entrusted to their care and submit to government oversight. In addition, the regulations required continual interaction between Defendants, the foster parent, the children's biological parents, and DHS. Construing the allegations in Plaintiffs' favor, Defendants' failure to ensure the safety of the children in this case can fairly be attributable to the state. Given the state's Fourteenth Amendment obligation, the pervasive regulation of Defendant Lula Belle's business, Defendant Lula Belle's receipt of state funds, and its contractual obligations, the Court finds that the complaint alleges a sufficient nexus between Defendants' actions and the State of Michigan for purposes of stating a claim under § 1983. That is, the Court cannot say that it is beyond doubt that Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. Therefore, Defendants' motion is denied as to this issue. In reaching this conclusion the Court makes no decision as to whether Plaintiffs can actually satisfy their burden of proof to show state action.

### 3. *Policy, Practice or Custom*

Claims brought under § 1983 cannot be based on vicarious liability. *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). In order to state a claim against a private corporation based on the conduct of its employees, the plaintiff must allege the existence of some policy, practice, or custom that is the moving force behind the constitutional violation. *See Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004). In the present case, Defendants argue that Plaintiffs have not alleged sufficient facts regarding the existence of a policy, practice or custom such that Defendant

7

Lula Belle can be held liable for its employees' misconduct.

The Court finds that Plaintiffs' complaint sets forth sufficient allegations to establish a policy, practice, or custom on the part of Defendant Lula Belle that was the moving force behind the constitutional violation. Plaintiffs allege that Defendant Lula Belle followed a practice of hiring unqualified workers and failing to provide adequate training for its workers. Further, Plaintiffs claim that Defendant Lula Belle's practices included inadequately supervising the foster care provided in the homes it certified, including the Rogers home. In addition to these allegations, Plaintiffs claim that Defendant Lula Belle suspected that Rogers had abused foster children on prior occasions and, despite the suspicion, placed the children in Rogers' care and took no action to provide additional training to workers handling the Rogers home. Moreover, Defendants Troy and Robinson were aware of facts indicating that the children had been abused in Rogers' care on more than one occasion and did not take action to prevent further abuse. Finally, the male child died as a result of abuse suffered while in Rogers' care. Taken together these allegations could indicate a pattern of deliberate indifference to the health and well-being of children entrusted to Defendant Lula Belle's supervision. The Court finds these allegations sufficient to show that Defendant Lula Belle maintained a policy, practice, or custom that was the moving force behind the constitutional violations in this case. *See, e.g., Thomas v. City of Chattanooga*, 398 F.3d 426, 433-34 (6th Cir. 2005) (finding a pattern of deliberate indifference is indicative of a policy or custom); *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507-508 (6th Cir. 1996). Therefore, Defendants' motion is denied as to this issue. In reaching this conclusion the Court makes no judgment as to whether Plaintiffs can sustain their burden of proof to show a policy, practice or custom by a preponderance of the evidence.

### 4. *Deliberate Indifference*

The Sixth Circuit has recognized that foster children have a substantive due process right to be free from the infliction of unnecessary harm in state-regulated foster homes. *Meador*, 902 F.2d at 476. Such a claim is based on the deliberate indifference standard the Supreme Court developed in cases brought under the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Estelle v. Gamble*, 429 U.S. 97 (1976). Defendants move to dismiss Plaintiffs' complaint because it fails to allege sufficient facts to show that Defendants were deliberately indifferent to the health and well-being of the minors involved in this case. The Court finds that Plaintiffs' complaint alleges sufficient facts to set forth a claim based on deliberate indifference.

"Deliberate indifference is not mere negligence" but "requires that the defendants knew of and disregarded a substantial risk of serious harm to [the children's] health and safety." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001). Plaintiffs cannot demonstrate deliberate indifference by alleging that "there was a danger of which [Defendants] should objectively have been aware." *Id.* Rather, "the [Defendants] must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Farmer*, 511 U.S. at 837.

In the present case, Plaintiffs allege that Defendants were aware of facts indicating that the children were being subjected to abuse in Rogers' home. The complaint alleges that Defendants suspected Rogers of abusing foster children that Defendants had placed in her care. Further, the complaint alleges that Defendants Troy and Robinson, while monitoring the children's care, became aware of signs of physical abuse, particularly on August 4, 2006. This is sufficient to show that Defendants were aware of facts indicating that the children were being subjected to a serious risk of harm. Moreover, at the pleading stage, this is sufficient to show that Defendants actually drew

9

the inference. Finally, Plaintiffs allege that despite awareness of these facts, Defendants did not take any action to protect the children from further abuse. Therefore, Plaintiffs have stated a claim based on deliberate indifference and Defendants' motion is denied as to this issue. In reaching this conclusion the Court makes no judgment as to whether Plaintiffs can sustain their burden to show deliberate indifference by a preponderance of the evidence.

### 5. *Defendant Walker*

Plaintiffs' claims against Defendant Walker are premised on a theory of supervisory liability. "The established law is clear that someone in a supervisory capacity ... must have at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending employee." *Durham v. Nu'man*, 97 F.3d 862, 869 (6th Cir. 1996). Defendants argue that Plaintiffs have not alleged facts showing that Defendant Walker authorized, approved or acquiesced in any unconstitutional conduct.

The Court finds that Plaintiffs have pled sufficient facts to state a claim against Defendant Walker based on supervisory liability. Plaintiffs have alleged that Defendant Lula Belle was obligated to monitor the children's foster care. Furthermore, pursuant to Michigan law, Defendant Lula Belle was required to develop a foster care plan for the children; consult with the foster parent and the biological parents; and report to DHS regarding the children's conditions and status. Plaintiffs claim that Defendants Troy and Robinson were immediately responsible for carrying out these duties. In addition, Plaintiffs allege that Defendant Walker directed and controlled Troy and Robinson. Plaintiffs also claim that despite knowing the children were at risk of abuse, Defendants Troy and Robinson did nothing to protect them from or prevent further harm. Finally, Plaintiffs claim that Defendant Walker knowingly acquiesced in their subordinates' deliberate indifference with respect to the children in this case. The Court finds that these allegations are sufficient to state

a claim against Defendant Walker based on supervisory liability. Therefore, Defendants' motion is denied as to this issue. In reaching this conclusion, the Court makes no judgment as to whether Plaintiffs can sustain their burden to show supervisory liability by a preponderance of the evidence.

### *6. Plaintiffs' Claims Based on Violations of Michigan Law*

Finally, Defendants move to dismiss Plaintiffs' complaint to the extent that the statutes Plaintiffs cite in their complaint fail to create a legitimate entitlement protected by the Fourteenth Amendment. In other words, Defendants argue that Plaintiffs' cannot state a procedural due process claim based on the statutes relied on in the complaint. Plaintiffs have not responded to this argument and instead focused on whether the children had a substantive due process right to be protected from harm. *See Meador*, 902 F.2d at 476-77 (finding that a substantive due process right existed by virtue of the foster child's special relationship with the state whereas a procedural due process right was created by the state's foster care statutes and regulations). Consequently, the Court deems this issue waived. Accordingly, Defendants' motion is granted to the extent that Plaintiffs are proceeding on a theory of procedural due process.

## B. Defendants' Argument for Summary Judgment

### *1. Legal Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005).

### *2. Absolute Immunity*

The Sixth Circuit has found that social workers, similar to Defendants in this case, may be entitled to absolute immunity when their activities are intimately related to judicial proceedings

11

involving child custody. *See Rippy v. Hattaway*, 270 F.3d 416, 423 (6th Cir. 2001). However, it is clear that "[i]mmunity rests not on status or title but on the function performed." *Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir. 1989). Defendants argue that they are entitled to absolute immunity because their actions in this case were taken in the course of judicial proceedings. Plaintiffs respond that Defendants actions were administrative and, therefore, are not entitled to absolute immunity.

The Court is inclined to agree with Plaintiffs; however, the Court finds that its analysis of this issue would benefit from further factual development following the completion of discovery. The issue of absolute immunity necessarily entails an analysis of the facts surrounding each function Defendants performed in this case, not just their overall responsibility to report to the Juvenile Court. *See Rippy*, 270 F.3d at 421-22. While some of those functions may have been intimately related to judicial proceedings, others appear to have been ministerial and conducted in the ordinary course of Defendants' business. As the parties have not come close to completing discovery, the Court finds that it would be inappropriate to decide this issue without a more complete record. Therefore, the Court declines to decide the issue of absolute immunity at this time and Defendants' motion is denied without prejudice.

## IV. CONCLUSION

Based on the foregoing analysis, IT IS ORDERED that Defendants' Motion to Dismiss and for Summary Judgment is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: September 17, 2007

CERTIFICATE OF SERVICE

       The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 17, 2007.

                                        s/Marie E. Verlinde
                                        Case Manager
                                        (810) 984-3290